UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

GENEVA WOODS-MCCRARY,      )
                           )
        Plaintiff,         )
                           )
vs.                        )      Civil Action No. CV-02-S-2150-NE
                           )
T-MOBILE USA, INC.,        )
                           )
        Defendant.         )

## MEMORANDUM OPINION

Plaintiff, Geneva Woods-McCrary, an African American female, alleges race discrimination in defendant's failure to promote her to the position of Assistant Retail Manager on two occasions.[1] She further alleges retaliation in response to her charge of discrimination and constructive discharge.[2] The action presently is before the court on defendant's motion for summary judgment (doc. no. 12) and motion to strike portions of plaintiff's affidavit (doc. no. 17).

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but also that it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[1] See Complaint at ¶¶ 5, 6.

[2] See Complaint at ¶¶ 7, 8.

affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make

a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

> In making this determination, the court must review all evidence and
> make all reasonable inferences in favor of the party opposing summary
> judgment.
>
> The mere existence of some factual dispute will not defeat
> summary judgment unless that factual dispute is material to an issue
> affecting the outcome of the case. The relevant rules of substantive law
> dictate the materiality of a disputed fact. A genuine issue of material
> fact does not exist unless there is sufficient evidence favoring the
> nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v.*

*Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc). The

motion pierces the pleadings, and "strikes at the heart of the claim. In effect it argues

that as a matter of law upon admitted or established facts the moving party is entitled

to prevail." Charles Alan Wright, *The Law of Federal Courts* § 99, at 705 (5th ed.

2

1994).

## II. FACTUAL BACKGROUND

### A.    Plaintiff's Employment History

Plaintiff originally was hired by an entity known as Powertel, Inc. ("Powertel") on August 25, 1998, to work as a retail salesperson at Powertel's University Drive store in Huntsville, Alabama.[3] She was promoted to the position of Assistant Retail Store Manager for the University Drive store in December of 1999, and reported directly to Ed Newman, who was the Retail Store Manger.[4]

Voice Stream Wireless Corporation ("Voice Stream") subsequently purchased Powertel and, effective June 1, 2001, Powertel retail stores began operating as Voice Stream retail stores.[5]   Voice Stream was the original defendant in this case, but defense counsel subsequently filed a "Motion To Change [the] Caption of [the] Case," stating that "[t]he correct name of the company that was plaintiff's former employer is T-Mobile USA, Inc. f/k/a Voice Stream Wireless Corporation."[6] However, there is no evidence in the summary judgment record indicating whether

---

[3] *See* Woods-McCrary Feb. 2003 Depo. at 7-9, 14 (attached as Exhibit A to Defendant's Evidentiary Submissions in Support of Summary Judgment, taken on February Feb. 13, 2003 (doc. no. 13)); Complaint, ¶ 1 (doc. no. 1).

[4] *See* Woods-McCrary Feb. 2003 Depo. at 10-11, 13, 18.

[5] *See* Affidavit of Jody Shaw, ¶ 4 (attached as Exhibit B to Defendant's Evidentiary Submissions).

[6] Doc. no. 6, filed Oct. 7, 2002.

3

this change in name was a result of merely a company name change, or a corporate acquisition or merger, or even when these developments occurred.

In any event, the evidentiary submissions do establish that, following Voice Stream's acquisition of Powertel, the new corporate management structure did not provide for an "Assistant Retail Store Manager" in any Voice Stream retail store supervised by an on-site, "Retail Store Manager."[7]  Instead, those persons, such as plaintiff, who previously had been classified by Powertel as "Assistant Retail Store Managers" were reclassified as "Senior Retail Sales Representatives."[8]  There was no adverse consequence as a result of the reclassification, however.   Instead, these individuals were accorded the same base pay, benefits, and seniority that they received or possessed prior to Voice Stream's acquisition.[9]  At least two Powertel "Assistant Retail Store Managers" were reclassified as "Senior Retail Sales Representatives" in Voice Stream's North Alabama sales region: plaintiff and David Calkins, a Caucasian male who worked at the Whitesburg Drive retail store.[10]

**B.     Assistant Retail Manager Position for the Florence Store**

The position of Assistant Retail Manager for the Florence store became vacant

---

[7] *See id.* at ¶ 5.

[8] *See id.*

[9] *See id.* at ¶ 6.

[10] *See id.*

4

prior to August 2001.[11] The Florence store was not supervised by an on-site, Retail Store Manager.[12] Instead, the Assistant Retail Manager of the Florence store reported to the Retail Store Manager located in the Decatur store.[13] When the Florence Assistant Retail Manager position became vacant, Voice Stream decided to continue to manage this retail store with an Assistant Retail Manager.[14] The Retail Store Manager with direct supervisory authority was responsible for selecting the Assistant Retail Manager, subject to the approval of the Regional Retail Manager.[15]

Jody Shaw was the Retail Store Manager responsible for managing Voice Stream's Decatur and Florence stores during August 2001.[16] Her office was located in the Decatur store.[17] Shaw posted notices for the open position in both the Decatur and Florence stores,[18] and also informed the other Retail Store Managers in her region, Ed Newman and Carol Cellarius, that she was looking for an Assistant Retail Manager for the Florence store.[19]

Shaw received two applications for the position — one from Rob Haden and

---

[11] *See id.* at ¶ 7.

[12] *See id.*

[13] *See id.*

[14] *See id.*

[15] *See id.* at ¶ 8.

[16] *See id.* at ¶ 7.

[17] *See id.*

[18] *See id.* at ¶ 9.

[19] *See id.*

the other from Heather Norman.[20]  Norman subsequently withdrew her application, however, after deciding that she did not want to commute to Florence on a daily basis.[21]  Haden thus was selected.[22]  Haden worked at the Decatur retail store prior to his promotion.[23]

Plaintiff did not apply for this position because she never saw the job posting.[24]  Plaintiff testified that she checked the company website, and the job was not posted.[25]  Plaintiff further testified that notice of the job opening was not posted at the University Drive store in which she worked.[26]  With respect to job postings, the Employee Handbook provides in pertinent part:

**Positions Posted**

Job openings (below the Director level) for all Regular Full-Time and Regular Part-Time positions will be posted on the Voice Stream website for three (3) business days, unless the Company has exercised its discretion not to post the particular opening.

---

[20] *See id.*

[21] *See id.*

[22] *See id.*

[23] *See* Woods-McCrary April 2003 Depo. at 48, attached as Exhibit D to Defendant's Evidentiary Submission.

[24] *See* Woods-McCrary Feb. 2003 Depo. at 76, attached as Exhibit A to Plaintiff's Evidentiary Submission.

[25] *See id.*  Plaintiff later equivocates as to whether she checked the company website in August 2001. *See id.* at 77. Defendant, however, does not attempt to assert that it ever posted this job opening on the company website as outlined in the employee handbook. Instead, defendant argues that it was acting within its discretion *not* to post the opening on the company website.

[26] *See id.*

The following are examples of situations in which the Company may decide not to post a job opening:

- To facilitate the placement of an employee whose position has been eliminated
- Where an incumbent is promoted within their current group or department
- Where an individual's special skills are required and are vital to Company interest
- Developmental assignments (as part of a pre-defined development program)
- Placement of an employee as a reasonable accommodation under the Americans with Disabilities Act and/or applicable state or local law
- Department reorganizations or realignments

This is not an all-inclusive list, and [it] is provided for illustrative purposes only. There may be other situations in which the Company decides, in its sole discretion, not to post a particular job opening.[27]

Plaintiff received a copy of the Employee Handbook.[28]

## C.   Assistant Retail Manager for Whitesburg Drive Store

The Retail Store Manager for the Whitesburg Drive retail store resigned in the Fall of 2001.[29]  Defendant decided to manage the Whitesburg Drive store with an Assistant Retail Manager, who would be supervised by Ed Newman, the Retail Store Manager of the University Drive store.[30]  Notices of the open position were posted

---

[27] *See* Employee Handbook, attached as Exhibit C at 51-52 to Defendant's Evidentiary Submission (doc. no. 13).

[28] *See* Woods-McCrary Feb. 2003 Depo. at 160-61.

[29] *See* Affidavit of Leon McCullouch, ¶ 6, attached as Exhibit E to Defendant's Evidentiary Submission.

[30] *See id.* at ¶ 7.

at the University Drive and Whitesburg retail stores.[31]  Several persons, including plaintiff, submitted applications.  The applicants were interviewed by Regional Manager Leon McCullouch and Ed Newman who, as Retail Store Manager of defendant's University Drive store, would become the direct supervisor of the person selected as Assistant Store Manager for the Whitesburg Drive store.  A white male, Jason Richards, ultimately was selected.[32]

Plaintiff graduated from Alabama A&M University in 1993, receiving a Bachelors of Arts degree with a major in Political Science and minor in Criminal Justice.[33]  As previously noted, she was hired by Powertel on August 25, 1998, as a retail salesperson at the University Drive store.[34]  She was promoted to Assistant Retail Store Manager in December 1999, prior to Voice Stream's acquisition of Powertel.[35] Following the acquisition, her position was reclassified to "Senior Retail Sales Representative."[36]

Plaintiff's main competition for the Assistant Retail Manager position, Jason

---

[31] See id. at ¶ 8.

[32] See Richards Depo. at 12-13, attached as Exhibit G to Defendant's Evidentiary Submission (doc. no. 13).

[33] See Woods-McCrary April 2003 Depo., attached as Exhibit B to Plaintiff's Evidentiary Submission, Defendant's Exhibit 21 (Plaintiff's Academic Record) (doc. no. 15).

[34] See Woods-McCrary Feb. 2003 Depo., at 8-9, attached as Exhibit A to Defendant's Evidentiary Submission.

[35] See id. at 10-11, 13.

[36] Affidavit of Jody Shaw at ¶ 5.

Richards, graduated from Grissom High School in 1997.[37]   At the time of his promotion, Richards had taken only one college course — Introduction to Western Civilization.[38]  Richards began his employment with Powertel almost one year prior to plaintiff, in September of 1997.[39]  Moreover, during the course of his employment with Powertel, Richards had worked in four positions (*i.e.*, retail sales representative, account executive, sales support representative, and business sales coordinator) prior to being promoted to Assistant Retail Manager of the Whitesburg Drive store.[40]

According to Regional Manager Leon McCullouch, defendant considered the following qualifications for the position of Assistant Retail Manager:

> (1) Minimum of 1 year sales management experience or equivalent with a proven track record and high level of achievement, (2) strong interpersonal skills and oral/written communication skills, (3) ability to coordinate high level of activity under a variety of conditions and constraints, (4) strong organizational skills, (5) strong time management skills, (6) computer knowledge a must, (7) strong human resource skills, (8) self-motivation with a strong desire for success, (9) ability to maintain strong community involvement and interaction, and (10) ability to maintain a high degree of confidentiality.[41]

---

[37] *See* Jason Richards Depo.at 5, attached as Exhibit E to Plaintiff's Evidentiary Submission.

[38] *See id.* at 6.

[39] *See id.* at 7.

[40] *See id.* at 7-11.

[41] Affidavit of Leon McCullouch at ¶10, attached as Exhibit E to Defendant's Evidentiary Submission.  McCullouch refers throughout his affidavit to an "Exhibit A," which purportedly is a written job description and qualifications for the position of Assistant Retail Manager contained in the Peak Retail Customer Service manual ("PRCS") attached to his affidavit.  Unfortunately, defendant failed to attach this job description to McCullouch's affidavit.

McCullouch added that

> Voice Stream also preferred that the Assistant Retail Store Manager
> have a BS/BA degree or one year of retail management experience.
> These qualifications were not mandatory. Furthermore, Voice Stream
> preferred that the candidate selected for this position have knowledge of
> its wireless communications products and services. . . .[42]

After conducting interviews, McCullouch ranked Richards first, Calkins second, and plaintiff third.[43] McCullouch ranked Richards first because he held a variety of positions within the company, had management experience in a retail store when he was a "key holder,"[44] and because he had the strongest interview.[45] Calkins ranked second because he had been an Assistant Retail Store Manager with Powertel at the Whitesburg Drive store and, thus, had previous management experience, but performed poorly in his interview.[46] Plaintiff ranked third because she did not display enthusiasm or self-motivation during her interview, her interpersonal and communication skills were not as strong as Richards or Calkins, and she did not have as much knowledge of the company's products and services as Richards and

---

[42] *See id.* at ¶ 11.

[43] *See id.* at ¶ 14.

[44] Ed Newman described a "key holder" as a responsible sales person who was allowed to hold keys to open and close a store, in addition to the store manager and senior retail sales representative. *See* Newman Depo. at 42, attached as Exhibit D to Plaintiff's Evidentiary Submission.

[45] *See* Affidavit of Leon McCullouch at ¶ 15.

[46] *See id.* at ¶ 16.

Calkins.[47]

Attached to Jason Richard's Affidavit as Exhibit C is the version of defendant's Peak Retail Customer Service manual ("PRCS") in effect when Richards was plaintiff's supervisor. Section 2.6 contains job descriptions and qualifications, one of which is for Assistant Retail Manager. With respect to qualifications, the pertinent page from the manual is reproduced below.[48]

### T Mobile

### Qualifications
Assistant Retail Manager

---

**General Requirements**: *Knowledge, skills, abilities, educational or licensing requirements, experiential equivalents, supervisory responsibility, key technologies, equipment used, and computer skills required for candidates for the position.*

| | |
|---|---|
| • | College degree or equivalent preferred. Experience to be considered. |
| • | Minimum of one year sales management experience or equivalent with a proven track record and high level of achievement. |
| • | Prior wireless industry experienced preferred. |
| • | Strong interpersonal skills, communication skills, and organizational skills. |
| • | Excellent oral and written communication skills. |
| • | Basic computer skills and knowledge of Word Perfect, Excel, Word, and PowerPoint a must |
| • | Able to coordinate a high level of activity under a variety of conditions and constraints. |

---

[47] *See id.* at ¶ 17.

[48] *See* Exhibit C, Section 2.0 - Page 21, to the Affidavit of Jason Richards, attached as Exhibit H to Defendant's Evidentiary Submission.

11

| | |
|---|---|
| • | Strong time management skills. |
| • | Strong Human Resource skills. |
| • | Self-motivation with a strong desire for success. |
| • | Ability to maintain strong community involvement and interaction. |
| • | Ability to maintain a high degree of confidentiality. |

**Approvals:**

_____          _____
*Associate*                                          *Date*

_____          _____
*Director/DVP*                                       *Date*

**The above list of duties is intended to describe the general nature and level of work performed by the incumbent. It is not to be construed as an exhaustive list of duties performed by the incumbent.**

After interviewing all applicants, Retail Store Manager Ed Newman ranked Richards first, plaintiff second, and Calkins third.[49] Newman explained his reasons for ranking Richards first during deposition:

> As stated earlier, the decision was made upon several factors, including the interview and the qualifications which, I stated, included length of service with the company, the number of positions they had held, various positions they had held. The interview was part of it, but it wasn't the entire process. It was qualifications and background. We looked at education. Also, I chose Jason [Richards] based upon my supervisor's recommendation, Leon McCullouch.[50]

---

[49] *See* Newman Depo. at 49 attached as Exhibit D to Plaintiff's Evidentiary Submissions (doc. no. 15).

[50] *See id.* at 48. *See also id.* at 40 (explaining that Newman chose Richards as his top candidate for the assistant manager position because of his qualifications, interview, and because his

According to Newman, plaintiff did "okay" in her interview,[51] but she did not provide the answers he was looking for regarding a career in retail.[52]  Otherwise he recalled no specific weaknesses.[53]  Newman listed wireless experience, personality, and education as plaintiff's strengths.[54]  Newman also explained that the responsibilities accompanying the assistant manager position in Voice Stream's corporate structure were greater than had been the case under Powertel.[55]

## D.   Constructive Discharge and/or Retaliation

In December 2001, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining that she had not been promoted in August 2001 and December 2001 because of her race.[56]

In June 2002, Jody Shaw — who previously had been the Retail Store Manager responsible for defendant's Decatur and Florence stores, but later was promoted to the position of Regional Retail Manager for defendant's North Alabama sales region — made two transfer decisions:[57]  (1) she transferred Ed Newman, the University

---

supervisor Leon McCullouch ranked Richards as the best candidate).

[51] *Id.* at 35.

[52] *See id.* at 36.

[53] *See id.*

[54] *See id.*

[55] *See id.* at 37.

[56] *See* December 2001 Charge of Discrimination, attached as Exhibit F to Plaintiff's Evidentiary Submission (doc. no. 15).

[57] *See* Affidavit of Jody Shaw at ¶ 11.

Drive Retail Store Manager, to the Whitesburg Drive store where she was physically located, in order to more closely supervise him; and (2) she transferred Jason Richards to the University Drive store where Newman previously had served as Store Manager.[58] The transfers were precipitated by Shaw's discovery that Newman had failed to document policy infractions of his staff on numerous occasions.[59]

After Shaw became Regional Retail manager for the North Alabama region, she was directed by Rusty Fuller, Executive Director for defendant's Mid-South Region, to require stores in her region to have all full-time employees work one Saturday during each calendar month.[60] Shaw informed Richards of this directive,[61] and sent plaintiff an e-mail stating that all full time salespersons must work one Saturday a month.[62] Richards scheduled all full-time sales representatives to work one Saturday each month.[63]

Plaintiff was scheduled to work on Saturday, July 13, 2002.[64] Plaintiff, however, told Richards and Shaw that she did not want to work on Saturdays, because

---

[58] *See id.*

[59] *See id.* at ¶ 12.

[60] *See id.* at ¶ 13.

[61] *See* Affidavit of Jason Richards at ¶ 15, attached as Exhibit H to Defendant's Evidentiary Submission.

[62] *See* Woods-McCrary Feb. 2003 Depo. at 136-37, attached as Exhibit A to Defendant's Evidentiary Submission.

[63] *See* Affidavit of Jason Richards at ¶ 15.

[64] *See id.*

of her lack of child care.[65]  Plaintiff made a personal decision to be home with her child, even though her husband was able to take care of their child on Saturdays.[66] Plaintiff did not work her scheduled Saturday shift on July 13, 2002.[67]  Richards rescheduled her to work on Saturday, July 27, 2002.[68] Once again, plaintiff informed Richards that she could not work on Saturdays.[69]

Richards also had problems with plaintiff's punctuality,[70] and gave her a verbal warning on July 24, 2002.[71]  Despite that, plaintiff  continued to show up late for work.  On July 30, 2002, she arrived one hour late.[72]  On August 21, 2002, she was fifteen minutes late in returning from lunch.[73]  On August 22, 2002, she was more than five minutes late arriving for work.[74]  Plaintiff does not deny that she was tardy on any of the aforementioned occasions.[75]

---

[65] *See* Woods-McCrary Feb. 2003 Depo. at 134, attached as Exhibit A to Defendant's Evidentiary Submission.

[66] *See* Woods-McCrary April 2003 Depo. at 84-85, attached as Exhibit B to Plaintiff's Evidentiary Submission.

[67] *See* Affidavit of Jason Richards at ¶ 15, attached as Exhibit H to Defendant's Evidentiary Submission.

[68] *See id.*

[69] *See id.*

[70] *See id.* at ¶ 10.

[71] *See id.*

[72] *See id.*

[73] *See id.*

[74] *See id.*

[75] *See* Woods-McCrary Feb. 2003 Depo. at 118-19.

Richards provided plaintiff a written warning on August 26, 2002, documenting her failures to show up for scheduled work shifts.[76] Richards asked plaintiff to sign the corrective action form.[77] Plaintiff left Richards' office, walked to the sales floor, used the computer, returned to Richards' office, and handed him a typewritten resignation.[78] Plaintiff contends that Richards told her she had to sign the corrective action form in order to return to work, and that she refused to sign it.[79] Plaintiff resigned her employment with defendant on August 26, 2002.[80]

Later that same month, plaintiff filed a second Charge of Discrimination with the EEOC, alleging that she had been constructively discharged on August 26, 2002.[81] In that charge, plaintiff described the circumstances leading to her resignation as follows:

> In June 2002, Jason Richards became the new store manager. Immediately, he began to scrutinize my work and attendance. On August 26, 2002, he presented me with a corrective form, a written warning, to sign regarding my absences. He told me the next time I was late or absent I would be terminated. When I refused to sign the form he told me he could not allow me to return to the floor to work. Because

---

[76] *See* Affidavit of Jason Richards at ¶ 11.

[77] *See* Richards Depo. at 29, attached as Exhibit G to Defendant's Evidentiary Submission.

[78] *See id.* at 29-30.

[79] *See* Woods-McCrary Feb. 2003 Depo. at 116, attached as Exhibit A to Plaintiff's Evidentiary Submission.

[80] *See* Affidavit of Jody Shaw at ¶ 15, attached as Exhibit B to Defendant's Evidentiary Submission.

[81] *See* August 2002 Charge of Discrimination, attached as Exhibit G to Plaintiff's Evidentiary Submissions (doc. no. 15).

he would not allow me to return to work, I quit.[82]

Plaintiff claims that she was retaliated against for having filed her previous charge of discrimination.[83]

### III. DISCUSSION

**A.     Failure to Promote Claim**

When evaluating employment discrimination claims supported by circumstantial evidence, courts are guided by the now familiar analytical framework that the Supreme Court announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct 1817, 36 L. Ed. 2d 668 (1973), and then elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). *See also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407(1993). *Cf. Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141-42, 120 S. Ct. 2097, 2105, 147 L. Ed. 2d 105 (2000). Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case of an employer's intent to discriminate on the basis of race or some other prohibited characteristic.

In a failure to promote case, the plaintiff must establish the following elements of a *prima facie* case:  (1) she is a member of a protected group; (2) she applied for,

---

[82] *Id.*

[83] *See id.*

17

and was qualified to fill, a position for which the defendant was accepting applications; (3) despite her qualifications, she was rejected for the position; and (4) after her rejection, the employer *either* kept the position open, *or* filled it with a person outside plaintiff's protected class. *See, e.g., Walker v. Mortham*, 158 F.3d 1177, 1179 n.2, 1185-93 (11th Cir. 1998) (explaining that a plaintiff need not introduce evidence of the relative qualification of the person promoted instead of plaintiff as part of her *prima facie* case for failure to promote); *Crawford v. Western Electric Company, Inc.*, 614 F.2d 1300, 1315 (5th Cir. 1980).[84]

"Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254, 101 S. Ct. at 1094. "The effect of the presumption of discrimination created by establishment of the *prima facie* case is to shift to the employer the burden of producing legitimate, non-discriminatory reasons for the challenged employment action." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *Burdine*, 450 U.S. at 254, 101 S. Ct. at 1094).

The employer's burden at the second stage of analysis "is one of production,

---

[84] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

18

not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106 (quoting *Hicks*, 509 U.S. at 509, 113 S. Ct. at 2748). "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 254-55, 101 S. Ct. at 1094 (citation and footnote omitted)). Indeed, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine*, 450 U.S. at 257, 101 S. Ct. at 1096. If a defendant carries its burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," *Burdine*, 450 U.S. at 257, 101 S. Ct. at 1096, then the "rebuttable presumption" of discrimination created by the demonstration of a *prima facie* case[85] is refuted, "drops from the case," and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255 & n.10, 101 S. Ct. at 1094-95 & n.10.

In this final step of the analytical process, the plaintiff must be afforded the

---

[85] *See Burdine*, 450 U.S. at 254 n.7, 101 S. Ct. 1094 n.7 (explaining that, in the *McDonnell Douglas* context, the phrase "*prima facie* case" is used to "denote the establishment of a legally mandatory, rebuttable presumption. . . .").

opportunity to "come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256, 101 S. Ct. at 1095; *McDonnell Douglas*, 411 U.S. at 804, 93 S. Ct. at 1825). The plaintiff's burden at this step of the analysis is that of "cast[ing] sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct' . . . ." *Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v. Southern Railway Co.*, 37 F.3d 603, 605 (11th Cir. 1994)); *see also Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (*en banc*). The plaintiff shoulders that burden by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1538 (quoting *Sheridan v. E.I. DuPont de Nemours & Company*, 100 F.3d 1061, 1072 (3d Cir. 1996)) (internal quotation marks omitted).

In summary, "once a plaintiff has established a *prima facie* case *and* has put on sufficient evidence to allow a factfinder to disbelieve an employer's proffered explanation for its actions, that alone is enough to preclude entry of [summary

judgment under Rule 56, or] judgment as a matter of law [under Rule 50]." *Combs*, 106 F.2d at 1532 (emphasis supplied). Stated somewhat differently, "evidence of pretext, *when added to* [the plaintiff's evidence of] a *prima facie* case, is sufficient to create a genuine issue of material fact that precludes summary judgment." *Id.* at 1531 (emphasis supplied) (citing *Batey v. Stone*, 24 F.3d 1330, 1335-36 (11th Cir. 1994)); *see also Cooper-Houston v. Southern Railway Co.*, 37 F.3d 603, 605 (11th Cir. 1994) (holding that once a plaintiff has established a *prima facie* case and produced sufficient evidence to permit a reasonable factfinder to disbelieve the employer's proffered explanation for its actions, that precludes summary judgment); *Howard v. BP Oil Co.*, 32 F.3d 520, 525 (11th Cir. 1994) (same).

## 1. Whether defendant discriminated against plaintiff in failing to promote her to the Assistant Retail Manager position for the Florence store.

### a. *Prima facie* case

Defendant moves for summary judgment arguing that plaintiff cannot maintain a *prima facie* case as she never applied for the Florence Assistant Retail Manager position. Plaintiff counters that she did not apply because she was not aware of the vacancy.

"The application requirement is important to establishing [the] presumption [of discrimination] because it shows that the decision-maker knew about the plaintiff and

the plaintiff's interest in the position." *Walker v. Prudential Property and Casualty Insurance Co.*, 286 F.3d 1270, 1275 (11th Cir. 2002). The Eleventh Circuit, however, recognizes an exception to the application requirement. "When other employees are not aware of the position's availability, it is 'legally insufficient and illegitimate' for the employer to assume that they are not interested in it." *Walker*, 286 F.3d at 1275-76 (quoting *Harris v. Birmingham Board of Education*, 712 F.2d 1377, 1383 (11th Cir. 1983)). Thus, under these circumstances, the Eleventh Circuit allows a plaintiff to make out a *prima facie* case by establishing that the defendant had some reason or duty to consider her for the position. *See Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984).[86] "This exception to the application requirement is significant because in many cases where discriminatory animus truly is at issue, an employer may simply avoid advertising a particular opening so as to avoid controversy among affected employees." *Dews v. A.B. Dick*

---

[86] Applying a similar analysis, other circuits have held that the "failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a *prima facie* claim . . . as long as the plaintiff made every reasonable attempt to convey his [or her] interest in the job to the employer." *Chambers v. Wynne School District*, 909 F.2d 1214, 1217 (8th Cir. 1990) (quoting *Equal Opportunity Commission v. Metal Service Company*, 892 F.2d 341, 348 (3d Cir. 1990)); *see also Wanger v. G.A. Gray Company*, 872 F.2d 142, 145 (6th Cir. 1989) (recognizing that "[i]n certain situations a formal application is not necessary in order to establish a *prima facie* case of discrimination"); *Babrocky v. Jewel Food Company and Retail Meatcutters Union, Local 320*, 773 F.2d 857, 867 (7th Cir. 1985) (concluding that "[b]ecause an employer may create an atmosphere in which employees understand that their applying for certain positions is fruitless, even nonapplicants can in appropriate circumstances qualify for relief").

*Company*, 231 F.3d 1016, 1022 (6th Cir. 2000).

Here, defendant selectively posted notices of the Assistant Retail Manager position for the Florence store, and plaintiff was unaware of the opening. Plaintiff previously held the position of Assistant Retail Store Manager of the University Drive store, until Voice Stream acquired Powertel, and reclassified plaintiff's position to that of Senior Retail Sales Representative. The person ultimately selected for the promotional opportunity in Florence, Rob Haden, was working in the Decatur retail store. Thus, neither Haden nor plaintiff were living in Florence or working in the Florence store prior to the selection of the Assistant Retail Manager.

Plaintiff asserts that former Regional Retail Manager, Leon McCullouch, knew she wanted to be the next person promoted to assistant manager, and that he told her she would be considered for the next position that became available.[87] According to plaintiff, in a discussion of her reclassification from assistant manager to senior retail sales representative, McCullouch said: "Well, you know you're doing a great job. Next time anything comes open, I definitely have you on the top of my list."[88] Under these circumstances, defendant should have considered plaintiff for the promotion as a matter of law, and her claim cannot be defeated simply because defendant assumed

---

[87] *See* Woods-McCrary Feb. 2003 Depo. at 83-84, attached as Exhibit A to Plaintiff's Evidentiary Submission (doc. no. 15).

[88] *See id.* at 84.

she was not interested. *See Carmichael*, 738 F.2d 1126, 1134.[89]

   b. Legitimate Non-discriminatory Reason and Pretext

  Defendant also argues that plaintiff cannot establish a material fact dispute that its decision to promote Haden to Assistant Retail Manager of the Florence store was a pretext for race discrimination. Defendant submits as its legitimate non-discriminatory reason for not promoting plaintiff that Haden was the only applicant for the job.[90] The summary judgment record is devoid of any other reason why plaintiff was not selected.

  As stated in the previous section, however, defendant selectively posted the Assistant Retail Manager position for the Florence store, and plaintiff was unaware of the opening. Defendant makes no challenge to plaintiff's qualifications, as plaintiff previously had held an Assistant Manager position prior to the acquisition of Powertel by Voice Stream. Defendant does not attempt to assert that Haden was more qualified than plaintiff. Thus, the court is confronted with plaintiff's *prima facie* case absent a sound articulated reason for Haden's selection. *See Carmichael*, 738 F.2d at 1135. Under these circumstances, it would be incongruous for the court

---

   [89] This case is distinguishable from *Walker v. Prudential Property and Casualty Insurance Co.*, 286 F.3d at 1276, where the promotional opportunity required a substantial move that many employees had been reluctant to make. In the present case, there is no discernible distinction between the commute to the Florence store by either Haden or plaintiff.

   [90] *See* Defendant's Motion for Summary Judgment at 20.

to find that defendant should have considered plaintiff for promotion to Assistant Retail Manager of the Florence store in order to recognize an exception to the application requirement of the *prima facie* case, but then to accept defendant's sole reason for promoting Haden — that plaintiff failed to apply for the position.

The resolution of this issue requires closer examination of defendant's reason for deviating from its job posting policy stated in its employee handbook, which states that "Job openings . . . for all Regular Full-Time and Regular Part-Time positions will be posted on the Voice Stream website for three (3) business days, unless the Company has exercised its discretion not to post the particular opening."[91] This language connotes that posting job openings on the company website is the normal course. Defendant maintains, however, that its stated job posting policy allows the company the discretion to deviate from the posting policy.[92] A policy that allows deviation at the employer's discretion or whim is hardly worth calling a policy. Thus, defendant's argument that it followed its policy, that allowed deviation from the policy, falls on deaf ears.

Defendant also points to the section of the Employee Handbook that allows it to not post a position "[w]here an incumbent is promoted within their current group

---

[91] Employee Handbook, attached as Exhibit C at 51 to Defendant's Evidentiary Submission (doc. no. 13).

[92] *See* Defendant's Motion for Summary Judgment at 21 (doc. no. 12).

25

or department."[93]  Defendant maintains that Haden was merely promoted within his "current group," because Haden worked at the Decatur retail store under Shaw's supervision, and the Florence store where the vacancy arose also was under Shaw's supervision.  According to Defendant, "current group" is defined by the Retail Store Manager — in this case, Jody Shaw's area of responsibility.  Unfortunately for defendant, the definition of "current group" is not apparent from the summary judgment evidence.  Indeed, Shaw's affidavit indicates that her hiring decisions were subject to the approval of the Regional Retail Manager.[94]  Therefore, "current group" may also reasonably be defined by "Region."  The Regional Retail Manager at the time was Leon McCullouch, and according to plaintiff, McCullouch indicated that plaintiff would be considered for the next opening for Assistant Manager.[95]  The Eleventh Circuit has indicated that hiring processes which are highly subjective or ad hoc are due to be viewed with suspicion.  *See Fowler v. Blue Bell, Inc.*, 737 F.2d 1007, 1011 (11th Cir. 1984).

Defendant's sole reason for not promoting plaintiff — that she did not apply for the position — is insufficient to rebut the presumption of discrimination created by plaintiff's establishment of a *prima facie* case in light of the fact that defendant

---

[93] Employee Handbook at 52, attached as Exhibit C to Defendant's Evidentiary Submission.

[94] *See* Affidavit of Jody Shaw at ¶ 8.

[95] *See* Woods-McCrary Feb. 2003 Depo. at 83-84, attached as Exhibit A to Plaintiff's Evidentiary Submission (doc. no. 15).

failed to post the opening for Assistant Retail Manager on the company website in conformance with its own policy or otherwise notify plaintiff of the opening. As such, defendant has failed to articulate a legitimate non-discriminatory reason for selecting Haden for the position. Accordingly, the burden shifting ends at this stage, and plaintiff is not required to demonstrate pretext.[96] Defendant's summary judgment motion on this issue is due to be denied.[97]

---

[96] The Supreme Court requires an employer, on pain of losing a case, to come forward with an explanation of its actions once a plaintiff has demonstrated a *prima facie* case of discrimination. If the employer fails to do so, judgment *must* be entered for the plaintiff. Such a result flows from the propositions sketched above: (1) proof of a *prima facie* case "eliminates the most common nondiscriminatory reasons for the plaintiff's rejection" (*Burdine*, 450 U.S. at 253-54, 101 S. Ct. at 1094) — *that is*, "lack of qualifications or absence of a job vacancy" (*Bell*, 715 F.2d at 1556); (2) having done so, the *prima facie* case establishes "a legally mandatory, rebuttable presumption" of intentional discrimination (*Burdine*, 450 U.S. at 254 n.7, 101 S. Ct. at 1094 n.7); and (3) "if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." *Id.* at 254, 101 S. Ct. at 1094 (footnote omitted).

Plaintiff did not file a cross-motion for summary judgment with respect to the Florence Assistant Manager position. At trial, however, given the state of the record, the court will be hard-pressed to recognize any other purported legitimate non-discriminatory reason or to even allow such a reason not previously disclosed to plaintiff to be submitted to a jury. *See Carmichael*, 738 F.2d at 1135 (noting that as the record revealed no other reason why plaintiff was not promoted, upon remand, the absence of legitimate articulated reasons "is of particular legal significance" because the district court "will be confronted with [the plaintiff's] *prima facie* case absent a sound articulated reason for his rejection." (quoting *Watson v. Nation Linen Service*, 686 F.2d 877, 881 (11th Cir. 1982)).

[97] Although plaintiff's response to defendant's summary judgment motion is silent on this issue, the court cannot ignore the law and commit plain error. The circumstances of this case make it impossible for the court to accept defendant's statement of the *prima facie* case and the arguments that flow therefrom.

2.     **Whether defendant discriminated against plaintiff in failing to promote her to Assistant Retail Manager for the Whitesburg Drive store.**

Defendant moves for summary judgment arguing that plaintiff cannot show that defendant's non-discriminatory reasons for not selecting her as Assistant Retail Manager for the Whitesburg Drive store were pretextual.[98] Defendant concedes that plaintiff has established a *prima facie* case of failure to promote under Title VII and § 1981, but produces legitimate, nondiscriminatory reasons explaining why plaintiff was not selected for the position.[99]

In most cases, "it is the *employer* who initially presents evidence of relative qualifications, not the employee." *Walker v. Mortham*, 158 F.3d at 1190 (emphasis in original). When an employer offers as its reason for *not* promoting a plaintiff the assertion that the person who *was* promoted was "more qualified," that allegation casts upon plaintiff the burden to demonstrate that the stated reason is pretextual.

> [A plaintiff] cannot . . . establish pretext simply by showing that she is more qualified than [the person who was selected]. *See Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir.2000). Rather, [the plaintiff] must adduce evidence that the disparity in qualifications is "so apparent as virtually to jump off the page and slap you in the face." *Denney v. City of Albany*, 247 F.3d 1172, 1187 (11th Cir.2001); *Lee*, 226 F.3d at 1254; *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1340 (11th. Cir.2000) (all quoting *Deines v. Texas Dep't of Protective & Regulatory Serv.*, 164 F.3d 277, 280 (5th Cir.1999)). The relevant inquiry for us, then, is not

---

[98] *See* Defendant's Motion for Summary Judgment at 22-26 (doc. no. 12).

[99] *See id.*

28

to judge which employee was more qualified, but to determine whether any disparity between [the qualifications of the person who *was* selected] and [the plaintiff's] qualifications is so great that a reasonable fact-finder could infer that [the defendant] did not believe [the person who *was* selected] to be better qualified.

*Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001) (citations omitted).

When a plaintiff asserts that she was more qualified than the person actually hired or promoted, the question is not "whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive." *Denny v. City of Albany*, 247 F.3d 1172, 1188 (11th Cir. 2001). Indeed, within the Eleventh Circuit, the standard for addressing relative qualifications requires a plaintiff to prove that she was "substantially more qualified than the person promoted" in order to establish pretext. *Lee v. GTE Florida*, 226 F.3d at 1255, *cert. denied*, 532 U.S. 958, 121 S. Ct. 1486, 149 L. Ed. 2d 374 (2001). The *Lee* Court explained that "disparities in qualification are not enough in and of themselves to demonstrate discriminatory intent *unless those disparities are so apparent as virtually to jump off the page and slap you in the face.*" *Id.* at 1254 (quoting *Deines v. Texas Department of Protective and Regulatory Services*, 164 F.3d 277, 280 (5th Cir. 1999)). As the Middle District of Alabama recently observed in *Norrell v. Waste Away Group, Inc.*, 246 F. Supp. 2d 1213 (M.D. Ala. 2003),

[t]his high standard for establishing discrimination based on the

29

relative qualifications of the competitors for a promotion serves the purpose of keeping the federal courts from second-guessing decisions made by employers in the course of their business.  As the Eleventh Circuit explained in *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999), federal courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivated a challenged employment decision." *See Deines*, 164 F.3d at 281 (explaining that "it is not the function of the jury to scrutinize the employer's judgment as to who is best qualified to fill the position. . . . The single issue for the trier of fact is whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination.").

*Norrell*, 246 F. Supp. 2d at 1223 n.12.  The Eleventh Circuit further explained in *Lee v. GTE Florida* as follows:

Nevertheless, evidence showing an employer hired a less qualified applicant over the plaintiff may be probative of whether the employer's proffered reason for not promoting the plaintiff was pretextual.  *See Alexander*, 207 F.3d at 1340; *see also Walker v. Mortham*, 158 F.3d 1177, 1190 (11th Cir.1998), *cert. denied*, 528 U.S. 809, 120 S. Ct. 39, 145 L. Ed. 2d 36 (1999) ("'The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination'") (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258-59, 101 S. Ct. 1089, 1096-97, 67 L. Ed. 2d 207 (1981)).

*Lee v. GTE Florida*, 226 F.3d at 1253-54.

An employer's departure from its own hiring policies and procedures "may be suggestive of discrimination" and sufficient to carry a plaintiff's burden of pretext under certain circumstances.  *Carter v. Three Springs*, 132 F.3d 635, 644 (11th Cir.

1998).

Newman and McCullouch both interviewed the top three candidates, and both chose Richards as the best person for the job. Newman and McCullouch both explained how plaintiff did not perform well during her interview. The Eleventh Circuit made clear in *Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir. 2000) (*en banc*), that an employer's use of subjective criteria — such as the perception of the employer's decision-making official that the plaintiff performed poorly during interview — can be just as valid as objective reasons for hiring or promotional decisions, *provided* the decision maker's explanation of the factual basis for its subjective opinion are "'clear and reasonably specific,' so that 'the plaintiff [can] be afforded a full and fair opportunity to demonstrate pretext.'" *Id.* at 1034 (quoting *Burdine*, 450 U.S. at 258, 101 S. Ct. at 1096).

In *Chapman*, the Eleventh Circuit held that, even though the employer's proffered reason for failing to hire the plaintiff — his "poor interview" — was subjective, the defendant nevertheless "offered a clear and reasonably specific explanation of why . . . the decisionmakers[] arrived at that subjective conclusion." *Id.* at 1035. Consequently, it constituted a legitimate, non-discriminatory reason for the contested employment action, which plaintiff was required to rebut by evidence demonstrating pretext. *Id.* at 1036; *see also Denney v. City of Albany*, 247 F.3d 1172,

31

1185-86 (11th Cir. 2001) ("As *Chapman* makes clear, an employer's use of subjective factors in making a hiring or promotion decision does not raise a red flag."); *Bass v. Board of County Commissioners*, 242 F.3d 996, 1005 (11th Cir. 2001) ("[A] subjective reason for an employer's action — such as poor interview performance — can be as legitimate as any other reason."). Here, defendant adequately explained that during her interview, plaintiff did not indicate a desire to pursue a future in retail, that she did not show enthusiasm, and that she did not display the same level of knowledge as Richards.

Plaintiff counters that she was better qualified for the position because she possessed a college degree, while Richards did not. Plaintiff further argues that she held the position of assistant manager prior to the corporate reorganization, and that gave her better management experience than Richards, entitling her to the promotion.

As previously noted, when a plaintiff asserts that he or she was more qualified than the person actually hired or promoted, the question is not "whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive." *Denny v. City of Albany*, 247 F.3d 1172, 1188 (11th Cir. 2001). Indeed, within the Eleventh Circuit, the standard for addressing relative qualifications requires a plaintiff to prove that he or she was "substantially more qualified than the person promoted" in order to establish pretext. *Lee v. GTE Florida*,

226 F.3d at 1255, *cert. denied*, 532 U.S. 958, 121 S. Ct. 1486, 149 L. Ed. 2d 374

(2001). "[D]isparities in qualification are not enough in and of themselves to

demonstrate discriminatory intent *unless those disparities are so apparent as virtually*

*to jump off the page and slap you in the face.*" *Id.* at 1254 (quoting *Deines v. Texas*

*Department of Protective and Regulatory Services*, 164 F.3d 277, 280 (5th Cir.

1999)).

The disparity between plaintiff and Richards is not so apparent. While the

court cannot say that it would have made the same choice, it is not the court's role to

supervise personnel decisions and to impose its uninformed views. *See Lee v. GTE*

*Florida, Inc.*, 226 F.3d at 1254 (noting that the role of the court is not to act as a

"super personnel department" second-guessing employers' business judgment) (citing

*Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse*

*Services*, 165 F.3d 1321, 1330 (10th Cir.), *cert. denied*, 528 U.S. 815, 120 S. Ct. 53,

145, L. Ed. 2d 46 (1999)). The summary judgment record clearly establishes that a

bachelor's degree was a preferred qualification for the job, but it was not the sole

qualification, nor even the most important criterion for selection.[100] Further, Newman

explained in his deposition how the new Assistant Retail Manager position at the

---

[100] *See, e.g.,* Exhibit C, Section 2.0 - Page 21, to the Affidavit of Jason Richards, attached as Exhibit H to Defendant's Evidentiary Submission; Jason Richards Depo.at 5, attached as Exhibit E to Plaintiff's Evidentiary Submission; Affidavit of Leon McCullouch at ¶¶10, 11 attached as Exhibit E to Defendant's Evidentiary Submission.

Whitesburg Drive store differed from the previous assistant manager position held by plaintiff.[101]

Even where an employer premises an employment decision entirely on subjective factors, or acts in a manner inconsistent with its own policy, the plaintiff must still make some showing by advancing sufficient probative evidence that the employer disregarded policy for discriminatory reasons. *See Clark v. Huntsville City Board of Education*, 717 F.2d 525, 527 (11th Cir. 1983). Plaintiff's protestations notwithstanding,[102] the summary judgment record is devoid of any evidence to indicate that defendant's reason for selecting Richards for the Assistant Retail Manager position was racially motivated, or is unworthy of credit by reasonable fact-finders. As such, defendant's motion for summary judgment, as it pertains to the failure to promote plaintiff to Assistant Retail Manager at the Whitesburg Drive store, is due to be granted.

## B.    Retaliation and Constructive Discharge Claims

"Retaliation is a separate violation of Title VII." *Gupta v. Florida Board of*

---

[101] *See* Newman Depo. at 37 attached as Exhibit D to Plaintiff's Evidentiary Submissions (doc. no. 15).

[102] *See* Affidavit of Woods-McCrary, attached as Exhibit C to Plaintiff's Evidentiary Submissions. Plaintiff attempts to assert via affidavit that the job announcement for the position required "at least one-year retail experience and/or a BS/BA degree." *Id.* at ¶ 5. Close examination of plaintiff's deposition on this very issue reflects that the basis for plaintiff's assertion is questionable. *See* Woods-McCrary Feb. 2003 Depo. at 62-65, attached as Exhibit A to Plaintiff's Evidentiary Submissions.

*Regents*, 212 F.3d 571, 586 (11th Cir. 2000). Section 704(a) of Title VII of the Civil

Rights Act of 1964 provides protection for employees who oppose or participate in

activities to correct an employer's discriminatory practices.

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Congress thus recognized two predicates for retaliation

claims: one for *opposition* to discriminatory practices, and another for *participation*

in protected activity.

> Under the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." . . . And, under the participation clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

*Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d

1171, 1174 (11th Cir. 2000) (citations omitted).

The filing of a formal charge of discrimination with the EEOC clearly is

protected under the "participation clause." *See, e.g., Berman v. Orkin Exterminating

Co.*, 160 F.3d 697, 702 (11th Cir. 1998). That clause protects actions and statements

35

which "occur in conjunction with or after the filing of a formal charge with the EEOC." *Total System Services, Inc.*, 221 F.3d at 1174 (citation and footnote omitted).

Generally speaking, a plaintiff must prove three elements to establish a *prima facie* case of retaliation: (1) she engaged in statutorily protected expression;[103] (2) she suffered an adverse employment action; and (3) there was a causal linkage between the protected conduct and the adverse employment action. *See, e.g., Bass v. Board of County Commissioners*, 256 F.3d 1095, 1117 (11th Cir. 2001) (Title VII); *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 507 (11th Cir. 2000)(Title VII); *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 798 (11th Cir. 2000) (FMLA); *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (Title VII); *Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (ADA); *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998) (Title VII); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998) (Title VII); *Little v. United Technologies*, 103 F.3d 956, 959 (11th Cir. 1997) (Title VII); *Meeks v. Computer Associates International*, 15 F.3d 1013, 1021 (11th Cir. 1994) (Title VII); *Goldsmith v. City of Atmore*, 996 F.2d 1155,

---

[103] "Statutorily protected expression includes filing complaints with the EEOC and complaining to superiors about sexual harassment." *Johnson v. Booker T. Washington Broadcasting Serv.*, 234 F.3d 501, 507 (11th Cir. 2000) (citing *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989)).

1163 (11th Cir. 1993) (Title VII and § 1981).

Once a plaintiff makes out a *prima facie* case of retaliation, "'the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action.' If the defendant offers legitimate reasons, the presumption of retaliation disappears. The plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999) (quoting *Raney v. Vinson Guard Service*, 120 F.3d 1192, 1196 (11th Cir.1997)) (citation omitted), *cert. denied*, 528 U.S. 966, 120 S. Ct. 402, 145 L. Ed. 2d 314 (1999)); *see also, e.g., Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997). In determining pretext, the court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that reasonable factfinder could find them unworthy of credence." *Silvera v. Orange County School Board*, 244 F.3d 1253, 1258 (11th Cir.) (citation and internal quotation marks omitted), *cert. denied*, 534 U.S. 976, 122 S. Ct. 402, 151 L. Ed. 2d 305 (2001).

"An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." *Lucas v. W.W. Grainger,*

*Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001) (ADA retaliation claim); *see also, e.g.*, *Gupta*, 212 F.3d at 587 (holding, in context of Title VII retaliation claim, that "[a]n adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'") (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)). *Cf. Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268, 141 L. Ed. 2d 633 (1998) (holding, in context of Title VII sexual harassment claim, that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."). "Conduct that falls short of an ultimate employment decision must meet 'some threshold level of substantiality . . . to be cognizable under the anti-retaliation clause'" of Title VII. *Gupta*, 212 F.3d at 587 (quoting *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998)).

Plaintiff contends that she was constructively discharged in retaliation for filing a charge of discrimination with the EEOC. "To successfully claim constructive discharge, a plaintiff must demonstrate that [her] working conditions were 'so

intolerable that a reasonable person in [her] position would have been compelled to resign.'" *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997) (quoting *Thomas v. Dillard Department Stores, Inc.*, 116 F.3d 1432, 1433-34 (11th Cir. 1997)); *see also, e.g., Durley v. APAC, Inc.*, 236 F.3d 651, 658 (11th Cir. 2000) (same).

Defendant moves for summary judgment, arguing that plaintiff cannot maintain a *prima facie* case of retaliation because she cannot show that she suffered an adverse employment action.[104] Defendant further argues in the alternative that plaintiff cannot demonstrate that its reasons for any adverse employment action were pretextual.[105] Plaintiff's entire response to these arguments consists of one paragraph:

> Defendants [sic] Retaliation Claim should be allowed to go forward. When all of the circumstantial evidence is viewed in a light most favorable to the Plaintiff. [sic] It can create an inference that the Defendant retaliated against the Plaintiff for filing a charge of Discrimination against the Defendant.[106]

This response is utterly ineffectual to defeat a motion for summary judgment that is supported by substantial evidence.

Although the court has no obligation to do so, a review of the summary judgment evidence reveals that plaintiff had repeated problems with punctuality, and

---

[104] *See* Defendant's Motion for Summary Judgment at 26 -27 (doc. no. 12).

[105] *See id.* at 27-29.

[106] Plaintiff's Brief in Opposition to Summary Judgment at 9 (doc. no. 16).

refused to show up for Saturday work assignments that were non-discriminatorily imposed upon all full-time employees.  Plaintiff submits no evidence to refute that she was frequently tardy and absent from work.  Plaintiff further fails to persuade this court, under prevailing authority, that either her voluntary resignation in a huff, or the circumstances leading up to her resignation, amounted to an adverse employment action or constructive discharge.  Accordingly, defendant's motion for summary judgment on plaintiff's retaliation and constructive discharge claims also is due to be granted.

**C.      Motion to Strike**

Defendant moves to strike portions of plaintiff's affidavit.[107]  Although the court agrees with some of the challenges made to the affidavit, even considering the statements made in the affidavit, the evidence is insufficient to defeat summary judgment.  Thus, the motion to strike should be denied as moot.

## IV. CONCLUSION

In light of the foregoing, the motion for summary judgment will be granted in part and denied in part.  The motion to strike will be denied as moot.  An order consistent with this memorandum opinion will be entered contemporaneously herewith.

---

[107] *See* Motion to Strike Affidavit (doc. no. 17).

DONE this ___ 12 th___ day of April, 2004.

United States District Judge